# EXHIBIT 7

**AMERICAN ARBITRATION ASSOCIATION**
**CONSUMER ARBITRATION PROCESS**

| | |
|---|---|
| Johnnie Williams,<br><br>     Claimant,<br><br>v.<br><br>Conn Appliances, Inc.,<br><br>     Respondent.<br>_____ | **CASE NO. 01-17-0001-5149** |

### RESPONDENT CONN APPLIANCES, INC.'S PREHEARING BRIEF

Respondent Conn Appliances, Inc. ("Respondent") files this Prehearing Brief.

### Introduction

In this consumer arbitration, Claimant seeks to recover over $1 million for phone calls he alleges he received from Conn Appliances after Claimant defaulted on his credit obligations. Claimant purchased appliances on credit from Conn Appliances. In exchange for those appliances, Claimant agreed to make various monthly payments to Conn Appliances and further agreed that Conn Appliances could contact him if he missed a payment. Claimant, in fact, missed multiple payments, and now seeks to recover over $1 million from Conn Appliances because it exercised its contractual right to contact Claimant to secure payment.

Claimant brings this claim under the Telephone Consumer Protection Act ("TCPA"). Under the TCPA, Claimant has the burden of proving: 1) that he revoked consent to be called; and 2) that Conn Appliances made post-revocation calls to him using an automatic telephonic dialing system ("ATDS"). Here, Claimant cannot prove that Conn Appliances placed calls to him through an ATDS. The reason for this is simple: the telephonic system Conn Appliances used to contact Claimant does not randomly or sequentially generate numbers to be dialed. Instead, Conn Appliances called the telephone number that Claimant provided to it. As the Third Circuit Court

1

of Appeals recently held, a defendant does not violate the TCPA when it calls a number provided by a customer:

> Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the Email SMS Service had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers. On the contrary, the record indicates that the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user.

*Dominguez v. Yahoo, Inc.*, No. 17-1243, 2018 WL 3118056 at *3-4 (3d Cir. June 26, 2018).

Further, while Claimant will assert he revoked consent to be called, the recordings and evidence in this case will reveal that Claimant gave contradictory instructions throughout his interactions with Conn Appliances as to whether he wishes to receive calls (many of which also took place after Claimant contacted and retained his counsel in this case who failed to intervene on his behalf to stop the allegedly improper calls for many months after).

## Argument & Citation to Authority

**I.      Claimant Cannot Prove That Conn Appliances Contacted Him Through an ATDS.**

In response to Conn Appliances' dispositive motion, Claimant argued that a factual issue exists because its expert – Robert Hansen (the same plaintiff's expert in this case and in the *Dominguez* case) – believes that Conn Appliances contacted him through an ATDS. This argument is based on two theories: 1) despite the plain language of the TCPA, a telephonic system need not randomly or sequentially generate numbers to be an ATDS; and, alternatively, 2) the operating system of "any computer" can randomly or sequentially generate numbers. Both of Hansen's opinions and plaintiff's arguments were squarely rejected by the *Dominguez* court, cited above.

**A. The D.C. Circuit rejected all prior FCC guidance on the definition of an ATDS in *ACA International*.**

The text of the TCPA plainly limits the definition of an ATDS to systems that randomly or sequentially generate numbers and then dial them by defining an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Previously, certain courts held that the FCC expanded the definition to include equipment that dials automatically from stored lists, without human intervention, under prior 2003, 2008, and 2015 FCC Orders. Indeed, Claimant's expert repeatedly cites the 2003, 2008, and 2015 FCC Orders in his report.

The D.C. Circuit Court, however, rejected all prior FCC guidance on this issue in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Specifically, the D.C. Circuit Court held that the FCC Orders were arbitrary and capricious in that certain language in the orders appeared to require random or sequential number generation, while at the same time other portions of the orders did not require it. *Id.* at 701-06. The D.C. Circuit Court thus vacated all prior guidance on this issue, as the Northern District of Georgia explained thoroughly:

> Plaintiffs have suggested by way of their supplemental authority that the FCC's prior rulings, such as the 2003 Order, remain valid.
> . . .
> The Court agrees with the former position. Contrary to the pronouncement of [a Florida district court], ***the D.C. Circuit clearly held that it invalidated all of the FCC's pronouncements as to the definition of "capacity" as well as its descriptions of the statutory functions necessary to be an ATDS.*** Indeed, the FCC specifically challenged the D.C. Circuit's jurisdiction to review its 2003 and 2008 orders in *ACA International*. *See* 885 F.3d at 701. The FCC argued that "because there was no timely appeal from those previous orders, it [was] too late now to raise a challenge by seeking review of a more recent declaratory ruling that essentially ratifie[d] the previous ones." *Id.* The D.C. Circuit disagreed. It held that the FCC's prior rulings were reviewable on two grounds because the 2015 Declaratory Ruling purported to clarify the definitions of its previous orders and also denied petitions for rulemaking on the issue of ATDS functions. *Id.* And

>in reviewing the FCC's descriptions of the functions a device must perform to be an ATDS, the D.C. Circuit relied on the FCC's prior orders that "had said the same" as the two competing views present in the 2015 Declaratory Ruling. *See id.* at 703. The D.C. Circuit "set aside the [FCC's] treatment of those matters" without qualification. *Id.* As a result, the Court finds that the FCC's prior orders with regard to interpretations of "capacity" and descriptions of the statutorily enumerated functions a device must perform to be an ATDS were vacated in ACA International.

*Sessions v. Barclays Bank Delaware*, 1:17–CV–01600–LMM, 2018 WL 3134439 at *4-5 (N.D. Ga. June 25, 2018) (emphasis added).

*Sessions* thus rejected the argument Claimant makes here – namely, that the 2003 and 2008 FCC Orders are still good law (Claimant concedes that the 2015 FCC Order was reversed). However, this is contrary to the actual language in, and import of, the D.C. Circuit's decision in *ACA International*. Indeed, at least two other federal district courts have reached the same result as *Sessions* and granted summary judgment to a defendant. *See Marshall v. CBE Group, Inc.*, 2:16–cv–02406, 2018 WL 1567852 (D. Nev. March 30, 2018) ("In light of this ruling, the Court will not stray from the statute's language which mandates that the focus be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."); *Herrick v. GoDaddy.com*, No. CV-16-00254, 2018 WL 2229131 at *8 (D. Ariz. May 14, 2018) ("Indeed, in light of the ACA Int'l decision, this Court declines to apply such a broad interpretation of this function. Broadening the definition of an ATDS to include any equipment that merely stores or produces telephone numbers in a database would improperly render the limiting phrase "using a random or sequential number generator" superfluous.").

Claimant may cite the *Ammons* decision for the proposition that the 2003 and 2008 FCC Orders somehow survived the D.C. Circuit's recent holdings. *See Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818 (M.D. Tenn. 2018). This argument is unpersuasive because the *Ammons* court

4

gave short-shrift to the D.C. Circuit's decision in *ACA International* and was openly hostile to a decision from the Second Circuit Court of Appeals, *Reyes v. Lincoln Automotive Fin. Servs.*, 861 F.3d 51 (2d Cir. 2017). Conn Appliances submits that opinions from the D.C. Circuit Court of Appeals, Third Circuit Court of Appeals, and Second Circuit Court of Appeals bear more weight than a decision from a single district court judge. Additionally, the decision in *Sessions* – rendered by a former class-action plaintiff's attorney in Judge May – is better reasoned and more respectful of appellate authority than *Ammons*.[1]

Claimant may also argue that Conn Appliance's telephonic system could be reconfigured in a way that would allow it to randomly or sequentially generate numbers to be dialed. Following the D.C. Circuit's recent decision, the Second Circuit Court of Appeals rejected that very argument in *King v. Time Warner Cable, Inc.*, 2018 WL 3188716, at *7 (2d Cir. 2018): "we conclude that the term 'capacity' in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software." The potential ability to re-program or re-configure Conn Appliance's telephonic system thus cannot be a basis to hold that it is an ATDS.

### B. Conn Appliances does not use an ATDS because its telephonic system does not randomly or sequentially generate numbers and then dial them.

The consequences of the D.C. Circuit's decision in *ACA International* were made abundantly clear in the Third Circuit Court of Appeals' decision in *Dominguez*, where the Third Circuit affirmed summary judgment on the grounds that the defendant did not randomly or sequentially generate the plaintiff's number. *Dominguez*, 2018 WL 3118056 at *3-4. Instead, the

---

[1] Conn Appliances notes that the FCC sought input on the definition of an ATDS and that the public comment period closed on June 28, 2018. The FCC's request for comment is discussed in greater detail in Conn Appliance's Motion to Stay.

5

defendant sent text messages – which are treated as calls under the TCPA – to a number provided by the prior user of the plaintiff's cell phone number. *Id.* Because the number was provided to the defendant, **rather than randomly or sequentially generated**, the text messages were not sent through an ATDS, and the defendant was entitled to summary judgment.

Claimant's claim should be rejected under the reasoning of *Dominguez*. Claimant will admit that he provided his cellular telephone number to Conn Appliances and that he originally provided consent for Conn Appliances to call him. Claimant does not allege that Conn Appliances randomly or sequentially generated his number. In fact, as we anticipate Claimant's own expert will admit, it would be irrational for Conn Appliances to do so in connection with attempting to collect upon Claimant's specific, personal debt. Thus, because Conn Appliances did not randomly or sequentially generate Claimant's number, his claim under the TCPA fails under *Dominguez*.

### C. The ability of "any computer's" operating system to generate random or sequential numbers does not render it an ATDS.

Claimant's second argument will be that his expert, Mr. Hansen, opined that Conn Appliance's telephonic system can generate random or sequential numbers because it runs on a Microsoft Window's operating system. The Third Circuit rejected this very same testimony from Mr. Hansen in the *Dominguez* case:

> The Hansen Report begins with the generalized assertion that "all computers can generate random or sequential numbers."20 The report then proposes six computer code commands, which, Hansen asserts, could be written into Yahoo's operating system in order to generate wireless numbers randomly or sequentially
> . . .
>
> Although the modification proposed in the Hansen Report appears simpler in comparison, the addition of a short sequence of code to any computer operating system bears a striking similarity to the downloading of an app onto any smartphone—the modification that was at issue in *ACA International*.

*Dominguez*, 2018 WL 3118056 at *2 and *3 n.23. The Court thus found unpersuasive the exact testimony Respondent expects Claimant to rely on here to argue that Conn Appliance's system is an ATDS. *See* Dkt. No. 45 p. 2. Indeed, the Third Circuit ultimately held that the district court "was therefore correct to exclude the . . . Hansen Reports, as they are irrelevant to the present capacity inquiry." *Dominguez*, 2018 WL 3118056 at *2.[2]

Mr. Hansen relies on the same report and testimony here as the report the Third Circuit rejected in *Dominguez*. Conn Appliances placed calls to Claimant using software it licenses from Noble Systems. Claimant's expert will admit that none of the Noble products have the ability to randomly or sequentially generate numbers to be dialed. He will also admit that the Latitude account notes system, in which Claimant's telephone number was stored, does not have the capacity to randomly or sequentially generate numbers to be dialed. Instead, we anticipate Hansen will argue only that because the Noble system runs on the common Windows operating system – the same system on which a $500 laptop from BestBuy or Wal-Mart runs – can randomly or sequentially generate numbers, the system is an ATDS. As the Third Circuit held, that reasoning cannot be correct, because it would turn every computer (and smartphone) into a random number generator under the TCPA. *Id.* Thus, Hansen's opinion that Conn Appliances employed an ATDS because its computers have Microsoft Windows fails under the text of the TCPA, *ACA International*, and *Dominguez*.

---

[2] Mr. Hansen's report and testimony have been excluded even before the D.C. Circuit decided *ACA International* on the grounds that his methodology was not sound. *See Mohamed v. Am. Motor Co., LLC*, No. 15-23352, 2017 WL 4310757, at *4 (S.D. Fla. Sep. 28, 2017).

7

## II. Claimant Must Prove That He Clearly and Unequivocally Revoked Consent to be Called.

One of the few portions of the 2015 FCC Order that *ACA International* upheld was the FCC's relates to revocation of consent. The D.C. Circuit Court affirmed that in the absence of a contractual provision to the contrary, a person may revoke consent to be called by "reasonable" means. *See ACA International*, 885 F.3d at 709-10. The Court stressed, however, that the word "reasonable" has teeth, meaning that unreasonable attempted revocations are not enforceable. *See id.* ("The selection of an unconventional method of seeking revocation might also betray the absence of any "reasonable expectation" by the consumer that she could "effectively communicate" a revocation request in the chosen fashion."); *see also Van Patten v. Vertical Fitness Group, LLC*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *23-24 (9th Cir. Jan. 30, 2017) ("Revocation of consent must be clearly made and express a desire not to be called or texted.")

As will become evident in the trial of this case, Claimant gave confusing and often contradictory instructions regarding payment-reminder calls from Conn Appliances. On several occasions, he even asked to be called at specific times of day and therefore consented to receive calls. He therefore will not be able to meet his burden of proving that he clearly and unequivocally revoked consent in a reasonable manner.

## III. Claimant Engaged in Several Months of Improper Call Baiting to Increase His Alleged Damages in this Case.

The TCPA was enacted to prevent unwanted telemarketing calls placed to randomly or sequentially generated numbers, not to provide a lottery-like windfall to plaintiffs and their lawyers. Accordingly, courts have denied TCPA claims, and rejected treble damages, when a plaintiff appeared to invite the supposedly "unwanted" calls. *See, e.g., Andersen v. Harris &*

8

*Harris, LTD.*, No. 13-cv-867, 2014 U.S. Dist. LEXIS 54953, at *33 (E.D. Wis. Apr. 21, 2014) (holding that plaintiff's outgoing voicemail instructing debt collectors to stop calling his phone was not revocation as a matter of law because to hold otherwise "would create a trap for all debt collectors who use automatic dialers: in essence, it would allow individuals to consent to receive automated calls, but then expose the debt collectors to liability as soon as the individual put up an outgoing voicemail message revoking consent, regardless of whether the debt collector actually received the message"); *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016) (holding that serial TCPA plaintiff did not have standing under the TCPA because "it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA as a result of its 'outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance'"); *Johansen v. Modernize, Inc.*, No. 2:16-cv-839, 2017 U.S. Dist. LEXIS 37979, at *4-5 (S.D. Ohio Mar. 15, 2017) (holding that defendant is entitled to pursue defense that plaintiff's activities as a potential "professional plaintiff" and to the degree to which plaintiff invites engagements with telemarketers vitiate plaintiff's standing to assert a TCPA claim in this action).

  Here, the evidence at the hearing will show that Claimant was in continuous contact with his TCPA counsel (who are the same attorneys representing Claimant in this case) throughout the entire time he alleges he received unwanted calls from Conn Appliances. Despite being in constant contact, Claimant allowed calls to pile up before his counsel sent a letter to Conn Appliances requesting that calls be stopped – after receiving that clear, unequivocal statement of intent from Claimant, the calls stopped. Had that letter come earlier in the process, there would have been no question as to Claimant's intent, and the calls would have stopped. Claimant and

his counsel thus cannot benefit to the tune of a million-dollar lottery award when a simple letter would have avoided the alleged damages altogether.

## Conclusion

A telephonic system must have the present capacity to randomly or sequentially generate numbers to be dialed for it to be an ATDS under the TCPA. Conn Appliance's system lacks that functionality. Instead, it manually entered a telephone number provided by Claimant, and then dialed that number when Claimant missed several payments for appliances he purchased on credit. Claimant's TCPA claim therefore fails, as he will not be able to prove that Conn Appliances contacted him through an ATDS. It will further become evident at the hearing that Claimant made confusing and often contradictory statements regarding revocation, thus negative any argument that his revocation was "reasonable."

Dated: July 18, 2018

Respectfully Submitted,

*/s/ Stefanie H. Jackman*
Stefanie H. Jackman
Georgia Bar No. 335652
jackmans@ballardspahr.com
Daniel L. Delnero
Georgia Bar No. 347766
delnerod@ballardspahr.com
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309
Telephone: (678) 420-9300
Facsimile: (678) 420-9301

Eric J. Troutman
Eric.Troutman@wbd-us.com
Womble Bond Dickinson (US) LLP
3200 Park Center Drive, Suite 700
Costa Mesa, CA 92626
Telephone: (657) 266-1043

*Counsel for Respondent Conn Appliances, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I served a copy of the foregoing document via email upon the following parties:

>Shaughn C. Hill, Esq.
>Morgan & Morgan, PA
>201 North Franklin Street, 8th Floor
>Tampa, FL 33602
>shill@forthepeople.com
>
>*Counsel for Claimant*

Dated: July 18, 2018

>*/s/ Stefanie H. Jackman*
>Stefanie H. Jackman
>Georgia Bar No. 335652
>
>*Counsel for Respondent Conn Appliances, Inc.*